**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-CR-151-JHP** |
| | ) | |
| **BRANDON LEE FRAILEY,** | ) | |
| | ) | |
| **Defendant/Petitioner.** | ) | |

## <u>ORDER</u>

This is a proceeding initiated by the above named Petitioner who is currently an inmate at the Federal Correctional Institution in Pine Knot, Kentucky.    This action was initiated pursuant to the provisions of 28 U.S.C. § 2255.  Petitioner contends his detention pursuant to the Judgment and Sentence of the United States District Court for the Northern District of Oklahoma, in Case No. 07-CR-151-JHP is unlawful.

The Respondent filed a response by and through the United States Attorney for the Northern District of Oklahoma.  In addition, the Court has reviewed the relevant trial court records associated with Case No. 07-CR-151-JHP.  The record reflects a two-count indictment was filed on September 5, 2007, charging Petitioner with assault resulting in serious bodily injury (Count One) and domestic abuse in the presence of a child (Count Two).  On September 11, 2007, James L. Cosby entered his appearance as Petitioner's retained counsel.

At the detention hearing, the Government presented testimony that Petitioner punched the victim in the face with a closed fist, kicked her in the head and body multiple times, and choked her by placing his hand around her throat.  As a result of the beating, she was admitted to the hospital where she reported headaches, pain, soreness, dizziness, and nausea. The victim's face and body showed multiple bruises and extensive swelling, and she reported seeing black spots and vomiting.  Doctors determined she was suffering a concussion, and that she was and/or had been at a substantial risk of death and in extreme pain due to the extent of her injuries.  The victim was admitted to the hospital on August 4, 2007, and checked herself out against medical advice on August 7, 2007.  While the victim was hospitalized, Petitioner attempted to influence her memory of the incident by repeatedly telling her to "remember the truth" about the incident and that she had hit him first.

On October 22, 2007, Petitioner plead guilty without a plea agreement.  In his petition to enter a plea of guilty, he stated he assaulted the victim "by striking her that resulted in serious bodily injury."

A presentence investigation report (PSR) was prepared, which summarized Petitioner's attack on the victim.  In describing the extent of the victim's injuries, the PSR noted "the hospital recommended that [the victim] be placed in protective housing due to the physical assault significant enough to place her at risk of death." (PSR at 9).  In addition, the PSR concluded that "Frailey threatened, intimidated and otherwise influenced a witness to commit or attempt to suborn perjury." _Id_. at 10.

In addition to contacting the victim repeatedly while she was still at the hospital, Petitioner called her from the Creek County Jail, stating "we need to make sure our versions are the same." He instructed her on what to say, and asked her to prepare a written statement for his attorney to use at the pretrial hearing. Based on the serious bodily injury suffered by the victim, and Petitioner's attempt to obstruct justice, the PSR increased his offense level a total of seven levels, and did not apply a downward adjustment for acceptance of responsibility.

Petitioner's extensive criminal history placed him in Criminal History Category VI, resulting in a sentencing guideline range of 77-96 months. Mr. Cosby did not file any objections to the PSR, but provided the Court with seven letters, including letters from Petitioner's mother, and the mother of three of his children. Petitioner did not ask Mr. Cosby to file an objection to the PSR.

On January 22, 2008, after finding that Petitioner caused serious bodily injury to the victim and attempted to suborn perjury by intimidating the victim, Judge H. Dale Cook sentenced Petitioner to 96 months imprisonment. In imposing the sentence, Judge Cook considered Petitioner's "violent and lengthy criminal history." Petitioner did not ask Mr. Cosby to appeal his conviction or sentence.

On February 11, 2009, Petitioner filed the instant §2255 motion. Petitioner alleges he received ineffective assistance of counsel for three reasons:

> (1)    Trial counsel failed to properly investigate the case before advising Petitioner to plead guilty;

3

(2)     Trial counsel failed to object to the guideline calculation; and

(3)     Trial counsel advised Petitioner there was no basis for appeal.

On October 23 and November 23, 2009, an evidentiary hearing was held before this court.

Petitioner's claim of ineffective assistance of counsel is governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Specifically, Petitioner must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. 667. Failure to establish either prong of the Strickland standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.*, 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in Strickland,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.*, at 466 U.S. at 689. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance. *Id.* The Tenth Circuit has indicated before representation will be considered ineffective, it must have made the trial "a mockery, sham, or farce, or resulted in the deprivation of constitutional

4

rights." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994); *see also*

*Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (holding counsel's performance must

have been "completely unreasonable, not merely wrong," to be constitutionally ineffective).

This Court "may address the performance and prejudice components in any order, but need

not address both if [petitioner] fails to make a sufficient showing of one." *Foster v. Ward*,

182 F.3d 1177, 1184 (10th Cir. 1999).

In the instant case, Petitioner complains he was prejudiced by the cumulative impact

of multiple deficiencies or errors by counsel.  The Government opposes the motion because

none of the grounds alleged provide an  appropriate basis for granting the relief requested.

The Court finds defense counsel provided competent representation in this matter,

including a proper investigation before advising Petitioner to plead guilty.  Petitioner argues

counsel only met with him three times.  As noted by the Government, Petitioner minimizes

trial counsel's involvement, preparation and investigation.  Both Mr. Shores, the assigned

AUSA, and Mr. Cosby testified regarding their extensive contact throughout the proceedings.

Mr. Shore testified:

> As is common in my experience, Mr. Cosby contacted me regularly
> via telephone.  He talked with me about the case. We discussed the
> possibility of a plea agreement, which Mr. Cosby and his client I was
> told were not interested in.  It was my understanding for the most
> part that Mr. Cosby's client had advised him that he wished to go to
> trial. And to that regard, we spoke on the phone regarding the case
> numerous times regarding discovery, in this case perhaps a little bit
> more than ususal because we had to enter into a joint stipulation
> together, so that was out of the ordinary, but required contact
> between us.

(Dkt.# 53 at 19).   When questioned concerning his contact with the AUSA, Mr. Cosby testified that he contacted AUSA Shores repeatedly.  (Id. at 102).  The level of contact Mr. Cosby had with the AUSA reflects his fervent representation of Petitioner.

Likewise, Mr. Cosby communicated with Petitioner and his mother concerning his efforts, developments in the case and how best to proceed.  The Government's Ex.#s 5a, 5b and 5c contain numerous calls between Petitioner and third parties.   Some of the conversations were between Petitioner and his mother.  During many of those conversations, there are references to Mr. Cosby's efforts to defend Petitioner, Mr. Cosby's contact with AUSA Shores and Mr. Cosby's legal advice concerning the defense.  For example:

1. On Gov. Ex.# 5a, Track 2, Petitioner is heard discussing his case with his mother. During the conversation, Mrs. Frailey made numerous references to her contact with "Jim" meaning Mr. Cosby.  The Fraileys discussed Mr. Cosby's belief that Petitioner would not be released pending the Government's appeal of the Magistrate's order allowing conditions of release pending trial. The Fraileys also discussed Mr. Cosby's statement that he would like to retain an expert.  Mrs. Frailey explains that Mr. Cosby asked for her assistance in obtaining an expert.  Petitioner urges his mother to do whatever Mr. Cosby asks.

2. On Gov. Ex.# 5a, Track 3, Petitioner is again heard discussing his case with his mother.  Mrs. Frailey specifically references a call  she received from Mr. Cosby during which Mr. Cosby details a conversation he had with the AUSA

6

concerning the Government's recommendation. The Fraileys further discussed Mr. Cosby's effort to negotiate on behalf of Petitioner.

3.     On Gov. Ex.# 5b, Track 2, Petitioner can again be heard discussing the status of his case and possible revocation by the State of Oklahoma.[1]  Petitioner explains to his mother his concern regarding the revocation.  The Fraileys talk about the fact that Mrs. Frailey expects to speak to Mr. Cosby the next morning. Petitioner further explains that he will enter a guilty plea to the charges in the federal prosecution if the state agrees not to revoke his suspended sentence.

Petitioner admitted during his testimony before this Court that his mother, Meridith Frailey, intervened or had contact with Mr. Cosby on his behalf. (Dkt. # 53 at 59-60).  The referenced calls illustrate the fact that in addition to speaking directly with Petitioner concerning the defense, Mr. Cosby had regular contact not only with the AUSA, but also with Petitioner's mother

Petitioner also claims Mr. Cosby failed to investigate the case prior to advising Petitioner to plead guilty.  Prior to advising Petitioner to plead guilty, however, Mr. Cosby had heard extensive testimony of two Government witnesses at the detention hearing, describing in detail the beating Petitioner inflicted upon the victim, and the injuries she

---

[1] At the time, Petitioner committed the crimes charged in this matter, he was serving a suspended sentence in a case filed in Mayes County District Court, State of Oklahoma.  As part of his representation in this case, Mr. Cosby intervened in the state case on Petitioner's behalf and requested that the state not revoke Petitioner's suspended sentence. (Hrg. Tr. at 96 -97).

suffered as a result. (Gov. Ex.# 2).  The testimony presented at the detention hearing also revealed Petitioner's initial attempts to influence the victim's testimony. *Id*.

Prior to advising Petitioner to plead guilty, Mr. Cosby had also received the PSR containing information about Petitioner's extensive criminal history, including the fact  he was on probation at the time of the charged offense. *Id*.  Early in the proceedings, it was also disclosed to Mr. Cosby that three separate women had obtained protective orders against Petitioner. *Id*.  Additionally, prior to the plea, Mr. Cosby had also received the district court's order revoking Petitioner's pretrial release, which indicated the district court found the testimony of the government's agents to be credible, and described the victim's injuries, as depicted in the government's photographs, as "brutal." (Gov. Ex. # 1b). Based on  this information alone, Mr. Cosby had a sufficient basis to advise Petitioner to plead guilty.

In further support of his motion, Petitioner argues that trial counsel did not attend the pre-sentence interview with him.  However, Petitioner testified that he never asked counsel to attend the interview and never asked the probation officer conducting the interview to terminate the interview until such time as his attorney could attend.  (Dkt,# 53 at 77).  U.S. Probation Officer Alton Livingston testified that she did not detect any concern or hesitation on Petitioner's behalf during her interview with him. (Dkt.# 54 at 138).   Petitioner participated in the entire interview and had no complaints regarding his trial counsel at that time.

Petitioner also claims trial counsel should have objected to the PSR and that trial counsel should have appealed.  Petitioner is not specific in this claim but merely suggests that an objection and appeal should have been filed.

Effectiveness, or competence is not measured by the number of pleadings an attorney files, nor how strenuously he objects when there are in reality insufficient grounds to support an objection or appeal. Petitioner has not identified any inaccuracies in the allegations contained in the PSR.  Petitioner never asked Mr. Cosby to file an objection.  Additionally, the record is void of any request by Petitioner that Mr. Cosby file an appeal.  In Mr. Cosby's professional opinion, there were no legitimate grounds for objection or appeal. (Dkt.# 53 at 108).

Furthermore, based on the evidence, there is strong justification for the obstruction enhancement discussed in the PSR.  As noted by the Government, the stronger the evidence for obstruction enhancement, the weaker the justification for objecting to it.  In the instant case, Petitioner's own conduct, including his obstruction and attempted subornation of perjury, lowered the likelihood that Petitioner would achieve a positive result if an objection had been raised.  Early in these proceedings, Petitioner began obstructing justice by attempting to contact the victim when she was hospitalized.  The obstruction continued throughout the proceedings.  By Petitioner's own admission, from the time he was detained to sentencing, he spoke to the victim approximately twenty (20) times. (Dkt.# 53 at 74). Petitioner further testified he attempted to contact the victim far more times than he was able to reach her. *Id*.

9

On Gov. Ex. # 5b, Track 3, Petitioner is heard having a discussion regarding his case with a third party, during which the other party questions Petitioner concerning the victim and why Petitioner is putting money on the victim's phone.  The party also questioned Petitioner about the victim's proposed testimony.  Petitioner explains that he has spoken to the victim and "she will say whatever she needs to say regardless ... to help me get out of trouble."

On Gov. Ex. # 5b, Track 5, Petitioner is heard talking directly to the victim.  Petitioner explains to the victim that he needs to ask her some questions so he can make sure their "versions are the same."  Petitioner then proceeds to explain what the victim should say.  Petitioner questions the victim as to whether there is any chance she is going to flip-flop.  Petitioner suggests to the victim that any statements she may have made in the hospital were made at a time when she was medicated.  Then Petitioner reminds the victim that he has arranged to give her money.  Later in the conversation, Petitioner questions whether there is any chance the victim won't do the things they discussed concerning her testimony.

In light of the strong evidence the victim suffered serious bodily injury and Petitioner's effort to obstruct justice and suborn perjury, counsel's decision not to file an objection to the PSR fell within the "wide range of professionally competent assistance."

Furthermore, Mr. Cosby did not render deficient performance by advising Petitioner there was no basis for appeal.  Petitioner knowingly and voluntarily plead guilty and, therefore, waived all non-jurisdictional challenges to his conviction. *United States v. Wright*, 43 F.3d 491, 494 (10th Cir. 1994).  Any challenges to the district court's sentencing

10

determination would have been reviewed for plain error, or, had they been preserved, for abuse of discretion. *United States v. Franklin-El*, 554 F.3d 903, 911 (10th Cir. 2009); *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008).  Given the strong evidence supporting the serious bodily injury and obstruction enhancements, and the corresponding denial of an acceptance of responsibility reduction, an appeal of Petitioner's sentence would have been frivolous.  In addition, Petitioner did not request that Mr. Cosby file an appeal. (Dkt.# 53 at 109).

Further, not only was there no actionable error by trial counsel,  Petitioner cannot prove he suffered prejudice from trial counsel's actions. The deficiencies complained of do not rise to the level of ineffective assistance of counsel set forth in *Strickland*, and even if trial counsel's performance was ineffective, the defendant cannot demonstrate prejudice — that is, a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  *Id.; Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). None of Petitioner's claims are supported by the record.  Even if the Court found merit  in any one or all of Petitioner's claims, he still fails to show he was prejudiced by the alleged deficient performance in light of all the evidence.

Further, Mr. Cosby negotiated with the first assistant district attorney for Mayes County, Oklahoma in order to prevent the State of Oklahoma from filing an application to revoke Petitioner's suspended sentence. (Dkt.# 53 at 96).  As a direct result of defense counsel's intervention, the State decided not to revoke. *Id*. Petitioner can show no prejudice

in light of the fact that Mr. Cosby prevented revocation of his suspended sentence and, therefore, possible additional incarceration.

Accordingly, for the reasons stated herein, Petitioner's Motion to Vacate, pursuant to 28 U.S.C. § 2255, is hereby denied.

**IT IS SO ORDERED** this 2nd day of March 2010.

James H. Payne
United States District Judge
Northern District of Oklahoma

12